[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12278
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 4, 2010
JOHN LEY
ACTING CLERK

Agency No. A099-831-204

EDWIN RAUL GARRIDO-CHAVAC,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 4, 2010)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Edwin Raul Garrido-Chavac, through counsel, petitions for review of the

Board of Immigration Appeals's final order affirming the Immigration Judge's

("IJ") denial of special cancellation of removal under the Nicaraguan Adjustment

and Central American Relief Act, Pub. L. No. 105-100, 111 Stat. 2160, 2193, 2197-98, § 203 (1997) ("NACARA"), and the denial of his claims for asylum and withholding of removal.  On appeal, Garrido-Chavac argues that: (1) he qualified for special cancellation of removal under NACARA through his mother who received lawful permanent resident status under NACARA; and (2) the IJ failed to state with specificity the reason for the adverse credibility determination, and substantial evidence fails to support the denial of his claims for asylum and withholding of removal.[1]  After careful review, we affirm.

Under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), we "must defer to an administrative agency's interpretation of a statute it is entrusted with administering if: (1) the language of the statute is silent or ambiguous with respect to the particular issue and (2) the agency's interpretation is reasonable."  Lin v. U.S. Att'y Gen., 555 F.3d 1310, 1316 n.4 (emphasis omitted). However, Chevron deference does not apply to non-precedential, single member decisions by the BIA that do not rely on existing BIA or federal court precedent.  Quinchia v. U.S. Att'y Gen., 552 F.3d 1255, 1258-59 (11th Cir. 2008).  Instead, we may choose to apply "the lesser level of deference enunciated in Skidmore v. Swift & Company, 323 U.S. 134, 140 . . . (1944),"

---

[1] Garrido-Chavac has abandoned his claim for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT") because he failed to address it on appeal, and we do not discuss it further.

2

which would provide that a single BIA member's interpretation of a statute is persuasive authority. Id. at 1259. Alternatively, we could remand to the BIA to permit it to interpret the statute in a precedential three-member opinion. Id. Where the language of the statute is clear, however, neither the BIA nor we need to go further in the analysis. Resendiz-Alcaraz v. U.S. Att'y Gen., 383 F.3d 1262, 1269 (11th Cir. 2004).

We review our subject matter jurisdiction de novo and lack jurisdiction to consider claims not raised before the BIA. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006). We review only the BIA's decision except to the extent the BIA expressly adopts the IJ's opinion or reasoning. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). However, where the BIA "affirmed and relied upon the IJ's decision and reasoning," we review the IJ's opinion, "to the extent that the BIA found that the IJ's reasons were supported by the record." Tang v. U.S. Att'y Gen., 578 F.3d 1270, 1275 (11th Cir. 2009). Although the BIA in this case did not expressly adopt the IJ's decision, it did affirm and rely on the IJ's decision and reasoning with regard to the adverse credibility determination, and we thus review both the IJ's and BIA's opinions. Id.

We review a credibility determination under the substantial evidence test. Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230-31 (11th Cir. 2006). Likewise, factual findings are reviewed under the substantial evidence test. Al Najjar, 257

F.3d at 1283. Under the substantial evidence test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1284 (quotation omitted). "To reverse a factual finding by the BIA, this Court must find not only that the evidence supports a contrary conclusion, but that it compels one." Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1320 (11th Cir. 2001). The fact that evidence in the record may support a conclusion contrary to the administrative findings is not enough to justify a reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

First, we find no merit in Garrido-Chavac's claim that he could receive an adjustment of status through his mother who received lawful permanent resident status under NACARA because he was under 21 years old when his mother received an adjustment of status, and there was no need for him to have maintained continuous physical presence in the United States for 7 years. Normally, a nonpermanent resident alien seeking cancellation of removal must, inter alia, have been physically present in the United States for a continuous period of not less than ten years. 8 U.S.C. § 1229b(b)(1)(A). Congress, however, changed this requirement for Guatemalan nationals who filed an application for asylum before April 1990, and for the child of such an alien who was a child when the decision to cancel removal or suspend deportation regarding the parent was made. NACARA, 111 Stat. at 2197-98.

4

In particular, NACARA modified § 309(c)(5) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") to add transitional rules for suspension of deportation that allowed the child of a Guatemalan parent who had received NACARA relief to also seek suspension of deportation. Id. at 2196-97. Similarly, with regard to special cancellation of removal, NACARA added a new section to § 309(c) that allowed an alien who met the requirements in the modified § 309(c)(5) of IIRIRA to apply for special cancellation of removal if, inter alia, the alien had been "physically present in the United States for a continuous period of not less than [seven] years immediately preceding the date" of the application. Id. at 2198; see Vuksanovic v. U.S. Att'y Gen., 439 F.3d 1308, 1310 n.2 (11th Cir. 2006) (describing the requirements for special cancellation of removal under NACARA). IIRIRA then eliminated suspension of deportation when that act became effective in 1997, thereby nullifying the transitional rules. See 8 U.S.C. § 1254; Mohammed v. Ashcroft, 261 F.3d 1244, 1248 n.3 (11th Cir. 2001) (noting that IIRIRA repealed suspension of deportation and replaced it with cancellation of removal); Innab v. Reno, 204 F.3d 1318, 1319 n.1 (11th Cir. 2000) (describing how IIRIRA consolidated suspension of deportation with waiver of deportation to form cancellation of removal).

The BIA implemented NACARA by requiring, for special rule cancellation of removal, that the alien be, inter alia, a Guatemalan national who filed an

5

application for asylum by April 1990, or the child of such an alien at the time the decision to cancel removal or suspend deportation was made. 8 C.F.R. § 1240.61. Having met those initial requirements, the alien must then show, among other things, that "the alien has been physically present in the United States for a continuous period of 7 years immediately preceding the date the application [for special rule cancellation] was filed." Id. § 1240.66. Although we have not addressed the issue, the Ninth Circuit has held that an alien seeking special cancellation of removal under NACARA may not rely on a parent's physical presence to satisfy the seven-year physical presence requirement. Barrios v. Holder, 581 F.3d 849, 862-66 (9th Cir. 2009).

Here, the BIA did not err by affirming the denial of Garrido-Chavac's application for special cancellation of removal.[2] The statutory scheme clearly requires the alien seeking special cancellation of removal to be physically present in the United States for seven continuous years. NACARA, 111 Stat. at 2197-98; 8 C.F.R. §§ 1240.61, 1240.66; Resendiz-Alcaraz, 383 F.3d at 1269. It is undisputed that Garrido-Chavac did not meet this requirement as he entered the United States in 2006 and was issued a notice to appear that same year. Despite his argument to the contrary, his mother's receipt of NACARA relief made him eligible for the

_____

[2] And to the extent Garrido-Chavac sought suspension of deportation, that provision was repealed when IIRIRA became effective in 1997. See Mohammed, 261 F.3d at 1248 n.3. Therefore, he could not qualify for suspension of deportation.

6

more lenient special cancellation of removal provision in NACARA, but it did not exempt him from the seven-year continuous physical presence requirement. See 8 U.S.C. § 1229b(b)(1)(A) (requiring ten years' of continuous physical presence in the United States); cf. NACARA, 111 Stat. at 2197-98 (requiring seven years' of continuous physical presence in the United States); 8 C.F.R. §§ 1240.61, 1240.66; see also Barrios, 581 F.3d at 862-66 (persuasive authority holding that an alien seeking NACARA relief could not impute his "parent's physical presence in the United States . . . [to himself] for purposes of satisfying NACARA's seven-year physical presence requirement"). Accordingly, he was statutorily ineligible for NACARA relief.[3]

We also reject Garrido-Chavac's claims that the IJ failed to state with specificity the reason for the adverse credibility determination, and that substantial evidence fails to support the denial of his claims for asylum and withholding of removal.[4] To establish asylum eligibility, the alien must, with specific and credible evidence, establish past persecution on account of a protected ground, or have a

---

[3] Even if the statutory language were ambiguous, the BIA panel member's interpretation of the requirements for special rule cancellation of removal under NACARA is reasonable, and persuasive, because it is a valid interpretation of the statutory scheme which, at the least, strongly suggests that the child of a Guatemalan granted special cancellation of removal himself must have been physically present in the United States for seven continuous years. See NACARA, 111 Stat. at 2197-98; 8 C.F.R. §§ 1240.61, 1240.66; Quinchia, 552 F.3d at 1258-59.

[4] Despite the government's claims, we have jurisdiction to consider Garrido-Chavac's challenge to the adverse credibility determination and the denial of his claims for asylum and withholding of removal because he raised them both before the BIA and before us.

7

"well-founded fear" that the protected ground will cause such future persecution. 8 C.F.R. § 208.13(b). We have described persecution as an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotation omitted). Where the applicant received threats, suffered attempted attacks, and physically was attacked on account of his political opinion over a period of several months, we have held such mistreatment is sufficient evidence of past persecution. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257-58 (11th Cir. 2007). In contrast, menacing telephone calls and threats, without more, do not rise to the level of past persecution. Sepulveda, 401 F.3d at 1231.

An applicant's testimony, if credible, may be sufficient to sustain the burden of proof for asylum without corroboration. 8 C.F.R. § 208.13(a). "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). "[A]n adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant . . . . [and, if] the applicant produces other evidence of persecution, whatever form it may take, the IJ must consider that evidence." Id. "Further, the IJ must offer specific, cogent reasons for an adverse credibility finding." Id. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility

decision was not supported by specific, cogent reasons or was not based on substantial evidence." Id. (quotation omitted).

Here, the BIA gave three reasons for upholding the adverse credibility finding: (1) Garrido-Chavac's inconsistent identification of the gang affiliation of the people who robbed him on the bus and in the park; (2) his testimony that he did not recognize the gang members when they boarded the bus, which contrasted with the statement in his asylum application that he recognized them instantly; and (3) the discrepancy in his description of the ages of the gang members' younger brothers who threatened him in the store. While we recognize that the BIA erred in finding an inconsistency regarding the ages of the younger brothers, the other reasons listed by the BIA were supported by the record and are sufficient to uphold the adverse credibility finding. Id.

Moreover, the corroborating evidence of persecution Garrido-Chavac submitted did not show persecution on a protected ground. The only evidence he submitted was a letter from his Scout leader, which indicated that gang members threatened Garrido-Chavac, and the Country Report, which described gang violence and incidents on buses. Threats, however, do not rise to the level of persecution, and the Country Report does not include specific details of persecution. Sepulveda, 401 F.3d at 1231. Therefore, substantial evidence supported the BIA's adverse credibility finding and the denial of Garrido-Chavac's

claims for asylum and withholding of removal.  <u>Chen</u>, 463 F.3d at 1230-31; <u>Forgue</u>, 401 F.3d at 1287.

**PETITION DENIED.**